**EAST TEXAS MEDICAL CENTER GILMER, Appellant**

v.

**Birder PORTER, Appellee**

NO. 12–14–00220–CV

Court of Appeals of Texas,
Tyler.

Opinion delivered January 13, 2016

---

46. *See id.; Emerson,* 735 S.W.2d at 493.

47. *Burbage v. Burbage,* 447 S.W.3d 249, 258 (Tex.2014); *Mansions in the Forest, L.P.,* 365 S.W.3d at 317.

48. *Burbage,* 447 S.W.3d at 258.

49. *Emerson,* 735 S.W.2d at 494.

50. *Id.*

Russell G. Thornton, for Appellant.

Michael L. Bernoundy, for Appellee.

Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

## OPINION

JAMES T. WORTHEN, Chief Justice

East Texas Medical Center Gilmer (ETMCG) appeals the trial court's denial of its motion to dismiss Birder Porter's suit against it. In its sole issue, ETMCG argues that the trial court was required to dismiss Porter's claim because it is a health care liability claim (HCLC), and she failed to timely file an expert report. We affirm.

## BACKGROUND

Porter alleged in her original petition that she "visited [ETMCG's] facility," and that "while walking into the facility, [she] slipped and fell in a wet substance/product that was in the walk area." Porter alleged that ETMCG was negligent "in failing to keep the walk area clean/safe," and that ETMCG "owed a duty to patrons to keep its facility in a safe condition."

ETMCG later filed a motion to dismiss Porter's suit, alleging that her claim was an HCLC and that the claim should be dismissed because Porter failed to timely serve an expert report as required by statute.[1] In her response to the motion, Porter alleged that she was at ETMCG's emergency room seeking treatment at the time of her fall, but was not yet admitted to the facility as a patient. After a hearing, the trial court denied ETMCG's motion, and this interlocutory appeal followed.[2]

## MOTION TO DISMISS

In its sole issue, ETMCG argues that the trial court abused its discretion in denying its motion to dismiss Porter's claim against it because her claim is an HCLC, she failed to timely file her expert report, and consequently, the trial court was required to dismiss her claim and award ETMCG its attorney's fees.

### Standard of Review

 Generally, we review a trial court's decision on a motion to dismiss an HCLC for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001). However, because this appeal concerns whether Porter's claim is an HCLC governed by the Texas Medical Liability Act (TMLA), a question of statutory construc-

---

1. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b) (West Supp.2015).

2. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp.2015).

tion, we apply a de novo standard of review. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex.2012). In making this determination, we consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Id.* at 258.

### Applicable Law

An HCLC is a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13 (West Supp.2015). If a plaintiff asserting an HCLC fails to timely file a compliant expert report and the defendant files a motion to dismiss, the trial court must grant the motion and award reasonable attorney's fees to the defendant. *Id.* § 74.351(b).

 To qualify as an HCLC, a claim alleging departure from safety standards need not be "directly related" to health care, but it must have a "substantive relationship with the providing of medical or health care." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex.2015). That is, there must be a "substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.* The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety. *Id.* The following "non-exclusive considerations" are relevant to the determination of whether such a claim is substantively related to the defendant's providing of medical or health care:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*

### Discussion

 ETMCG first argues that *Ross* does not apply to these facts because the hospital in *Ross* did not assert that the area where the claimant fell was a patient care area, nor did it claim that the area had to meet particular cleanliness or maintenance standards related to the provision of health care. The Texas Supreme Court recently addressed this argument, and held that the *Ross* analysis applies in determining whether a non-patient's claim

based on the hospital's violation of premises-related safety standards is an HCLC. *See Reddic v. E. Tex. Med. Center Reg'l Health Care Sys.*, 472 S.W.3d 672, 673 (Tex. 2015) (per curiam). Porter's injury occurred when she slipped on a wet substance while walking into the emergency room "walk area" seeking treatment. She was not yet a patient at the time she fell. Porter alleges that ETMCG failed to follow premises-related safety standards. Consequently, we hold that the *Ross* analytical framework applies to Porter's claim. *See id.*

ETMCG argues next that the first through third, fifth, and seventh *Ross* factors lead to the conclusion that Porter's claim is an HCLC.[3] With regard to the first through third factors, it is true that Porter was seeking healthcare at the time she was injured. However, Porter's injury occurred while she walked into the hospital's emergency room in the "walk area." She was not yet a patient, had not yet received any treatment, and her injury did not occur in an area where patients might be while receiving care. Moreover, the record does not support the hospital's contention that the alleged negligence occurred while in the course of performing tasks with the purpose of protecting patients from harm. The alleged negligence relates to ETMCG's failure to keep the emergency room walk area, an area frequented primarily by potential patients, employees, and other visitors, free of wet substances. *See Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 431 (Tex. 2015) (discussing, under *Ross* analysis, that hospital's claim that patients might be receiving care where injury occurred, because injury occurred in hallway

and patients must regularly traverse hallway on their way to hospital destination, was unsupported by record); *Reddic*, 474 S.W.3d at 673–74 (holding, under *Ross* analysis, that although floor care in area frequented by persons seeking or receiving care is related to health care, record failed to demonstrate that claim had more of a relationship to provision of health care than fact that it arose from occurrence inside hospital when visitor fell in main lobby of hospital).

With regard to the fifth and seventh factors, ETMCG contends that Porter's claim is an HCLC because several laws, regulations, agency guidelines, and accreditation guidelines applicable to it in maintaining its floors are related to the provision of health care and patient safety in the area where Porter fell. Specifically, ETMCG points to federal regulations for hospitals participating in Medicare which mandate that such hospitals meet certain general safety requirements, including that hospitals like ETMCG must be maintained to ensure an acceptable level of safety, that they have an ongoing program for quality improvement and patient safety, and ensure patient safety. *See* 42 C.F.R. §§ 482.1, .21, .41. ETMCG also points to Texas law requiring hospitals to meet certain requirements for licensure, including that they must appoint a safety committee and safety officer and take steps to promote general safety of the facility. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.002 (West 2010); 25 TEX. ADMIN. CODE § 133.1(a) (West 2015) (Tex. Dep't of State Health Servs., Hospital Licensing); 25 TEX. ADMIN. CODE § 133.142 (West 2015) (Tex. Dep't of State Health Servs., General

---

**3.** It is clear that the fourth factor does not apply because Porter was not an employee providing health care services at the time of her injury. Moreover, the sixth factor does not apply because Porter alleges her injury arose from a condition on the premises, not from an instrumentality used in providing health care.

Safety).[4]

ETMCG further relies on requirements from The Joint Commission, an independent organization that accredits and certifies health care organizations. Under the standards referenced by ETMCG, hospitals are evaluated on whether they have a written plan for managing the environmental safety of patients and everyone else who enters the hospital's facilities. JOINT COMM'N STANDARDS EC.01.01.01. Hospitals are also evaluated for whether they identify safety risks associated with the environment of care that could affect patients, staff, and other people coming to the hospital's facilities and take action to minimize or eliminate those risks. *Id.* at EC.02.01.01.

ETMCG also contends that the hospital must implement an infection control program under federal regulations, and that it must provide a sanitary environment to avoid sources and transmission of infection and communicable diseases under Texas law. *See* 42 C.F.R. § 482.42; 25 TEX. ADMIN. CODE § 133.41(g) (West 2015) (Tex. Dep't of State Health Servs., Hospital Functions and Services). In support of ETMCG's infection control program argument, it points to the Centers for Medicare and Medicaid Services (CMS) guidelines in its State Operations Manual. The manual include CMS's adoption of various standards by the Centers for Disease Control and Prevention (CDC) and the Occupational Health and Safety Administration (OSHA). The CDC guidelines pertain to disinfection and sterilization of healthcare facilities, including when, how, and how often hospital floors should be cleaned for the purpose of preventing the spread of microorganisms and blood-borne pathogens. The OSHA guidelines discuss a hospital's obligation to maintain a sanitary environment, state that the hospital should take steps to prevent slips, trips, and falls, and provide recommendations concerning when and how floors should be cleaned.

The Texas Supreme Court has addressed these arguments and concluded under similar facts that the record does not show the hospital's failure to comply with the legal and regulatory standards had a substantive relationship to the safety standards underlying the plaintiff's claim. *See Galvan*, 476 S.W.3d at 431–32 (analyzing ETMCG's same argument concerning infection control program requirements under state and federal law and concluding that no substantive nexus is present); *Reddic*, 474 S.W.3d at 675–76 (analyzing remaining arguments and concluding that same standards raised here under state and federal law, as well as standards from Joint Commission, do not show required nexus). We agree and hold that the record does not support the conclusion that the regulatory standards asserted by ETMCG establish a substantive nexus between the provision of health care and the underlying facts of Porter's claim. *See id.*

Finally, relying on cases holding that regulations can provide evidence of the standard of care, ETMCG argues that these regulations' applicability to the claim, and their possibility of setting the standard of care, render Porter's claim an HCLC. *See, e.g., Denton Regional Medical Center v. LaCroix*, 947 S.W.2d 941, 951 (Tex.App.–Fort Worth 1997, pet. denied). However, as we have stated, ETMCG does not identify a commission or agency regulation that it says evidences a particular standard of care that is both substantively related to the provision of health care and

---

4. ETMCG notes that Texas law also requires hospitals to comply with federal laws affecting the health, safety, and rights of hospital patients. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.026(a)(5) (West Supp.2015).

underlies Porter's claim. *See Reddic*, 474 S.W.3d at 675 .

In conclusion, it is no doubt important for the hospital to keep areas such as the "walk area" of the emergency room free of fall hazards. However, there is nothing about this duty peculiar to a hospital that does not also apply to any business open to the public, and ETMCG has not shown how this general duty is related to its provision of health care under these facts. *See Galvan*, 476 S.W.3d at 431–32; *Reddic*, 474 S.W.3d at 675–76; *Ross*, 462 S.W.3d at 504. Accordingly, we hold that the record before us does not reflect a substantive nexus between the safety standards Porter claims ETMCG violated and. ETMCG's provision of health care. *See id.* Therefore, the trial court did not err in denying ETMCG's motion to dismiss Porter's suit against it.

ETMCG's sole issue is overruled.

## DISPOSITION

Having overruled ETMCG's sole issue, we *affirm* the trial court's order denying ETMCG's motion to dismiss Porter's claim.

