**Opinion issued June 21, 2018**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

### NO. 01-17-00638-CV
_____

**IASIS HEALTHCARE CORPORATION AND SJ MEDICAL CENTER, LLC D/B/A ST. JOSEPH MEDICAL CENTER, Appellants**

**V.**

**ALAN PEAN, Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-43519**

---

### MEMORANDUM OPINION

The Medical Liability Act (Chapter 74 of the Texas Civil Practice and Remedies Code) requires a plaintiff asserting a health care liability claim to serve a statutorily sufficient expert report showing that his claim has merit. In this interlocutory appeal, we address (1) whether one or more of Alan Pean's claims

against Iasis Healthcare Corporation and SJ Medical Center, LLC d/b/a St. Joseph Medical Center ("SJMC") (collectively, the "Hospital Defendants") is a health care liability claim under Texas law, and (2) if so, whether Pean's expert report satisfied statutory requirements. We conclude that Pean's negligence claim is a health care liability claim, and Pean's sole expert report failed to meet statutory requirements. We thus reverse as to Pean's negligence claim. We affirm as to Pean's other two claims because they are not health care liability claims under Chapter 74.

### Background

According to Alan Pean, this case began when he experienced a "mental-health crisis," crashed his car, and was admitted to SJMC. Emergency room staff examined Pean, noted his history of anxiety and bipolar disorder, and admitted him for overnight observation. The next morning, Pean's parents were apparently told that their son would be discharged soon.

Pean asserts that he again became disoriented and confused. "[A]bout three times," he came out of his hospital room naked. Nurses asked him to return to his room. A nurse then called hospital security.

Two armed and uniformed off-duty Houston police officers employed by SJMC as hospital security officers responded and entered Pean's room. Pean says that he was experiencing a mental-health episode at that time.

2

The parties dispute what happened when the officers arrived, but after an altercation, one officer tased Pean and the other officer shot him (missing his vital organs). An officer then handcuffed Pean.

Pean was charged with two first-degree felony counts of aggravated assault of a public servant. He was also charged with misdemeanor reckless driving in connection with his drive to SJMC on the night in question. A grand jury later no-billed the felony charges, and the criminal court-at-law dismissed the reckless driving charge.

*Trial court proceedings*

Pean sued both Hospital Defendants for negligence. He also asserted malicious prosecution and conspiracy claims against Iasis (and other defendants not party to this appeal). In his negligence claim, Pean contends that the Hospital Defendants were negligent in "[s]ending uniformed police officers—armed with guns, Tasers, and handcuffs—and not supervised or aided by healthcare professionals, to deal with an unarmed, peaceful person," and in failing to adequately train or supervise security officers "to deal with the confused, the mentally ill, the disoriented, and other troubled or impaired people" by establishing "proper policies and procedures on protecting people at the hospital from harm."

In his malicious prosecution and conspiracy claims, Pean alleges that Iasis and two police department defendants (not parties to this appeal) worked together

3

to exonerate the security officers by bringing charges against Pean for felony assault and reckless driving.

Pean maintains that his claims against the Hospital Defendants are not health care liability claims. But to be cautious, Pean offered the expert report and curriculum vitae of Charles M. Brosseau, Jr. Brosseau is not a physician.

The Hospital Defendants argue that Pean's claims are health care liability claims and that Brosseau's report is inadequate under Texas law. Pean disagrees on both points.

After a hearing, the trial court overruled the Hospital Defendants' objections and denied their motion to dismiss.

## Discussion

Because the Texas Medical Liability Act's (Chapter 74's) expert report requirement applies only to health care liability claims, we must determine whether Pean asserts health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.351(a), 74.001(a)(13). We first address Pean's negligence claim and conclude that it is a health care liability claim. Thus, Chapter 74's requirements apply, and Pean was required to serve an expert report that met statutory standards. He did not do so.

Pean's malicious prosecution and conspiracy claims, however, are not health care liability claims. Thus, Chapter 74 does not apply to those claims.

## A. Chapter 74 Health Care Liability Claims

Whether a claim is a health care liability claim is a question of law that we review de novo. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). Chapter 74 defines "health care liability claim" as:

> a cause of action against a health care provider for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). If a claim is a health care liability claim, the claimant must serve one or more expert reports in compliance with the statute. *Id*. § 74.351. In assessing whether a claim constitutes a health care liability claim, we focus on the facts underlying the claim, not artfully-phrased language in the plaintiff's pleadings. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

Where a claim against a health care provider alleges a departure from safety[1] standards, it is a health care liability claim if there is a "substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504. "The pivotal issue . . . is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its

---

[1] "Safety" is not defined by the Act. The Texas Supreme Court has construed "safety" according to its common meaning as "the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) (internal quotation marks omitted).

duties to provide for patient safety." *Id*. at 505. We consider the following non-exclusive list of factors:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm?

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated?

3. At the time of the injury was the claimant in the process of seeking or receiving health care?

4. At the time of the injury was the claimant providing or assisting in providing health care?

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider?

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care?

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*; *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 430–31 (Tex. 2015); *Reddic v. E. Tex. Med. Ctr. Reg'l Health Care Sys.*, 474 S.W.3d 672, 673–74 (Tex. 2015).

We also consider the extent to which expert testimony from a health care professional is necessary to support the claim. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005) ("The necessity of expert testimony from

6

a medical or health care professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services.").

Negligence

Under this rubric, we conclude that Pean's negligence claim is a health care liability claim. The crux of Pean's claim is that the Hospital Defendants acted below the standard of care in sending to Pean's hospital room armed officers who were not supervised by healthcare professionals and were not adequately trained to handle mentally ill patients. He argues that the Hospital Defendants should have established proper policies to protect people in the hospital. This claim asserts a cause of action against a health care provider for an alleged departure from accepted standards of safety. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Pean's claim implicates the Hospital Defendant's duties as health care providers, including the duty to ensure patient safety. *Ross*, 462 S.W.3d at 505 ("The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety.").

The *Ross* factors confirm that the alleged departure from safety standards here is tied substantively to the Hospital Defendants' provision of health care. *Id.* The first factor, which examines whether the alleged negligence occurred while the

7

defendants were protecting patients from harm, supports the required nexus here. Pean alleges that, while he was in his hospital room, he suffered a mental health episode. He states that he repeatedly left his room naked despite nurses telling him to return to his room, and then a nurse called security. The officers came to Pean's room in response to the nurse's call, and soon thereafter, an officer shot Pean. The safety standards allegedly breached here implicate the Hospital Defendants' policies on handling and protecting its patients. On this record, the alleged negligence occurred while the Hospital Defendants were protecting patients from harm. *See Diversicare*, 185 S.W.3d at 849–50 ("[T]he supervision of [plaintiff] and the patient who assaulted her and the protection of [plaintiff] are inseparable from the health care and nursing services provided to her.").

Likewise, the second *Ross* factor—where the incident occurred—strongly supports a nexus. Pean was in his hospital room when the incident occurred. *Phillips v. Jones*, No. 05-15-00005-CV, 2016 WL 80561, at *2 (Tex. App.—Dallas Jan. 7, 2016, no pet.) (mem. op.) ("A physician's examination room is not a room 'accessible by the public.' Instead, it is a room accessible by the physician, staff, and patients. The physician uses the examination room to examine patients who have sought the physician's medical services."); *Hous. Methodist Willowbrook Hosp. v. Ramirez*, 539 S.W.3d 495, 500–01 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (exam room and table are linked to health care in ways that publicly-

8

accessible hospital hallway in slip-and-fall case is not). That the officers tasered and shot Pean in an area not open to the public—but instead where he was during and for treatment—implicates the Hospital Defendants' "obligation to protect [its] patients." *See Ross*, 462 S.W.3d at 505.

The third factor also supports a nexus between the alleged safety infraction and the Hospital Defendants' provision of health care. This factor considers whether the claimant was seeking or receiving health care when he was injured. *Id.* The parties dispute where Pean was in the discharge process,[2] but they agree that Pean was in his hospital room during the incident. And Pean contends that, at the time he was injured, he was suffering a mental-health episode of disorientation and confusion—his asserted reason for seeking care. It was hospital nurses who asked Pean to return to his room and called security. *See Phillips*, 2016 WL 80561, at *2 (rejecting argument that because plaintiff's examination was complete when she slipped and fell off examination table step, her care no longer implicated health care provider's obligation to provide patients a safe environment).

---

[2]  Pean argues that he was "either discharged or about to be" when he was shot. No evidence in our record shows that he had been fully discharged at that point. In fact, both Pean's expert report and his amended petition state that he was shot "[d]uring his admission." *See Simmons v. Texoma Med. Ctr*, 329 S.W.3d 163, 169 (Tex. App.—El Paso 2010, no pet.) ("We have searched the record and cannot find anything to indicate that [plaintiff's] medical care was complete when the alleged improper restraint occurred. . . .").

The fifth *Ross* factor is in accord. It examines whether the alleged negligence arises from safety standards that are part of the professional duties owed by the health care provider. Here, it does. Pean's amended petition alleges that the Hospital Defendants were negligent in "[s]ending uniformed police officers—armed with guns, Tasers, and handcuffs—and not supervised or aided by healthcare professionals, to deal with an unarmed, peaceful person," and in failing to adequately train or supervise security officers "to deal with the confused, the mentally ill, the disoriented, and other troubled or impaired people." Pean alleges that the Hospital Defendants did not establish "proper policies and procedures on protecting people at the hospital from harm." Pean's expert report likewise states that "[i]t fell to the governing body and hospital administrators who were legally responsible for patient care and the services provided in the hospital to make sure that there were adequate procedures and policies in place to deal with non-combative, non-dangerous people in the hospital who were disobeying instructions, acting erratically, or experiencing a disoriented sense of reality." Pean asserts a departure from safety standards that are part of the professional duties owed by the health care provider.[3]

---

[3] *See Hunsucker v. Fustok*, 238 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("It is well established 'that a claimant cannot escape the Legislature's statutory scheme by artful pleading.'").

In addition, the standard of care for how a hospital should protect and handle mental-health patients is an issue that would benefit from expert testimony. *See Diversicare*, 185 S.W.3d at 844–51. "It is not within the common knowledge of the general public to determine the ability of patients in weakened conditions to protect themselves, nor whether a potential target of an attack in a health care facility should be better protected and by what means." *Id.* at 851 (expert testimony required to determine whether restraint was necessary to prevent assaults by nursing home resident); *Simmons v. Texoma Med. Ctr.*, 329 S.W.3d 163, 169–70 (Tex. App.—El Paso 2010, no pet.) (similar); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34 (Tex. App.—El Paso 2006, no pet.) (expert testimony required to determine ability of patients to protect themselves from assaultive conduct or "whether a potential target of an attack in a health care facility should be better protected and by what means"). The general public does not know how a hospital should protect mental-health patients and those around them.

Certain of the *Ross* factors—whether the claimant was providing health care and if the instrumentality was the type used in health care, for instance—might weigh against a nexus. But on balance, the *Ross* factors demonstrate that Pean's negligence claim is substantively related to the Hospital Defendants' provision of health care.

Pean's negligence claim is a health care liability claim as defined by Chapter 74.

Malicious Prosecution and Conspiracy

Chapter 74 does not apply, however, to Pean's malicious prosecution and civil conspiracy claims. In these claims, Pean alleges that Iasis and the two police department defendants (who are not parties to this appeal), with malice and without probable cause, brought criminal charges against him; that he is innocent of the charges; that they were resolved in his favor; and that he suffered damages as a result of the charges. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006) (malicious prosecution elements). The essence of these claims is that Iasis and the two police department defendants "worked together with the goal of getting Mr. Pean criminally charged." *See Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.) ("An action for malicious prosecution asserts the complaining party 'has improperly been made the subject of the legal process to his damage.'").

These allegations do not give rise to a cause of action "for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). This is not a claim brought by Pean or hospital security officers arguing that they should have been

12

protected by the hospital. Nor are these claims arising out of the same facts as Pean's negligence claim. Unlike the negligence claim, these claims do not implicate the hospital's health care, medical care, professional, administrative, or safety-based duties. At their core, these claims do not allege that Iasis provided health or medical care, safety, or professional or administrative services directly related to health care that fell below the standard of care.[4] Instead, these are claims brought by Pean (a former patient) against Iasis premised on the act of filing criminal charges. Medical expert testimony would not be required to establish whether or not Iasis was a willing participants in a conspiracy to maliciously prosecute Pean.

---

[4]     Contrary to the Hospital Defendants' contention, this is not a case alleging a breach of professional or administrative services. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(24) (defining "professional or administrative services" as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs."). In Pean's malicious prosecution and conspiracy claims, he does not allege a breach of the hospital's duties or services required to maintain licensure, accreditation, or certification. *Cf. CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016) (claims alleging that hospital was legally required to request an inquest after death but instead fraudulently obtained permission for a private autopsy, and that body should not have been moved without permission, alleged violations of professional or administrative services that were directly related to the provision of health care; Carswell alleged that CHRISTUS violated duties imposed on it due to its status as a licensed health care provider, and violation of these duties by the hospital could result in its licenses being suspended or revoked.).

13

Pean's malicious prosecution and conspiracy claims are accordingly not health care liability claims as defined by Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *Thilo Burzlaff, M.D., P.A., v. Weber*, -- S.W.3d --,  2018 WL 1176378, at *5 (Tex. App.—San Antonio Mar. 7, 2018, no pet. h.) (Chapter 74 did not apply to defamation, DTPA, negligence, and intentional infliction of emotional distress claims premised on physician telling police that patient had "mental issues"); *Alsup v. Hickory Trail Hosp.*, No. 05-16-00527-CV, 2017 WL 1046769, at *13 (Tex. App.—Dallas Mar. 20, 2017, no pet.) (mem. op.) (Chapter 74 did not apply to invasion of privacy claim for wrongful disclosure of sensitive information by filing records in court to defend lawsuit); *see also Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 713 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).[5]

## B.    Expert Report Requirement

Because Pean's negligence claim is a health care liability claim, Pean had to serve an expert report that satisfied Chapter 74's requirements. He did not do so.

---

[5]    *See also Loyds of Dallas Enterprises, LLC v. Jennings*, No. 05–15–00670–CV, 2016 WL 718573, at *5 (Tex. App.—Dallas Feb. 23, 2016, no pet.) (mem. op.) (statutory duty not to retaliate against employees for reporting violations of law does not directly relate to treatment that was or should have been performed for a patient); *McAllen Hosps., L.P. v. Gomez*, No. 13-12-00421-CV, 2013 WL 784688, at *6 n.5 (Tex. App.—Corpus Christi Feb. 28, 2013, no pet.) (mem. op.) ("The facts giving rise to appellee's DTPA claim involve appellant's conduct in rendering healthcare services in a consumer transaction. In contrast, the facts giving rise to appellee's claim for declaratory judgment involve appellant's conduct in filing a lien against appellee to secure payment for healthcare services.").

### 1.    Waiver

We first address Pean's argument that the Hospital Defendants waived their right to an expert report because they participated in discovery and did not plead Chapter 74 as an affirmative defense. This record shows no waiver.

A defendant may waive its right to dismissal if the defendant's conduct is "inconsistent with the intent to rely upon the right to dismissal." *Jernigan v. Langley,* 111 SW.3d 153, 157–58 (Tex. 2003). Pean argues that by serving discovery, the Hospital Defendants waived their rights under Chapter 74. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s) (staying discovery until plaintiff serves expert report).

The record does not support Pean's argument. The parties entered a Rule 11 agreement delaying the due date for Pean's expert report, "without waiver or prejudice to" the parties' "opposing claims" about the application of Chapter 74. Then, before Pean served his expert report, the Hospital Defendants served discovery requests. Pean asserts—outside of the record—that the Hospital Defendants also noticed and took his deposition, took the depositions "of other witnesses," requested and responded to requests for disclosure, and responded to two integrated discovery requests.

The Hospital Defendants' participation in limited discovery did not waive their rights under Chapter 74. Moreover, with the Rule 11 agreement, the Hospital

15

Defendants reserved the right to raise a Chapter 74 challenge. Their conduct was not inconsistent with the intent to assert the right to dismissal. *See Jernigan,* 111 SW.3d at 157–58 ("Attempting to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal . . . ."); *see also Seifert v. Price*, 05-08-00655-CV, 2008 WL 5341045, at *2 (Tex. App.—Dallas Dec. 23, 2008, pet. denied) (mem. op.); *Durst v. Woo*, No. 14-10-00623-CV, 2011 WL 825094, at *4 (Tex. App.—Houston [14th Dist.] Mar. 10, 2011, no pet.) (mem. op.).

Finally, Chapter 74's expert report dismissal provision is not an affirmative defense that must be pleaded. *Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 823 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Uduma v. Wagner*, No. 01-12-00796-CV, 2014 WL 4259886, at *5 n.10 (Tex. App.—Houston [1st Dist.] Aug. 27, 2014, pet. denied) (mem. op.).[6] Pean cannot establish waiver.

### 2. Adequacy of the Report

Under Chapter 74, a plaintiff asserting a health care liability claim must, as a threshold matter, serve each defendant physician or health care provider with one or more expert reports and a curriculum vitae of each expert whose opinion is offered to substantiate the merits of the claims. TEX. CIV. PRAC. & REM. CODE § 74.351(a), (i); *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 42 (Tex. 2013).

---

[6] In any event, the Hospital Defendants amended their answer to assert Chapter 74.

16

Chapter 74 specifies that, in almost all instances, the causation expert must be a physician. *Id.* § 74.351(r)(5); *see also Columbia Valley Healthcare Sys, L.P. v. Zamarripa*, 526 S.W.3d 453, 458 (Tex. 2017) ("[U]nder the Act, only physicians can be experts on causation."). In particular, it defines an expert who offers "opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in *any* health care liability claim, [as] a *physician* who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(C) (emphasis added); *see also id.* § 74.403 ("[A] person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed *only* if the person is a *physician* and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.") (emphasis added).

Chapter 74 contains only two exceptions to the physician rule and neither applies here. In cases against a dentist or podiatrist, the expert may be a dentist or podiatrist. Because this case involves neither teeth nor feet, Pean's expert was required to be a physician. *See id.*; *id*. § 74.351(r)(5); *see also Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) ("[W]hen the legislature uses certain

17

language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended.") (citation omitted).

Because Brosseau is not a physician, his expert report does not satisfy Chapter 74. TEX. CIV. PRAC. & REM. CODE §§ 74.351(r)(5), 74.351(r)(6); *see also Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez*, 382 S.W.3d 619, 627 (Tex. App.—Fort Worth 2012, no pet.) ("Brosseau is not qualified to opine on how the actions of [defendant] caused [patient]'s death because he is not a physician."). Because Pean offered only Brosseau's report, Pean cannot solve this problem by pointing us to the report of another expert.

Pean attempts to avoid the issue by arguing that a causation opinion is unnecessary in this case. He contends that his report is sufficient because "general experience and common sense" will enable a lay person to determine a causal connection. Texas law disagrees. Even if we were to assume that expert testimony on causation would ultimately not be necessary in this case, Pean still must comply with Chapter 74's threshold requirements.

Chapter 74 contains no exception to the expert report requirement for cases in which expert testimony may not be (or is not) ultimately necessary on causation. Texas courts have accordingly concluded that regardless of whether a party may be excused from proving causation at trial, that party is not excused from Chapter 74's threshold requirement of serving a statutorily-sufficient expert report. *See*

18

*Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex. 2005) ("It may be that once discovery is complete and the case is tried, there is no need for expert testimony . . . . But the Legislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case and opined as to the applicable standard of care, that it was breached, and that there is a causal relationship between the failure to meet the standard of care and the injury, harm, or damages claimed."); *Merry v. Wilson*, 498 S.W.3d 270, 277 (Tex. App.—Fort Worth 2016, no pet.) ("[W]e join our sister courts in holding that an expert report is still required regardless of whether res ipsa loquitur would apply at trial.").

Because his sole expert report is deficient, Pean failed to satisfy the requirements of Chapter 74.[7]

\* \* \*

We affirm the trial court's order as to the malicious prosecution and conspiracy claims. We reverse, however, as to Pean's claim for negligence.

Chapter 74 affords the trial court the ability to grant a 30-day extension for a claimant to cure deficiencies in his expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c)*; cf. id.* § 74.351(l) ("A court shall grant a motion challenging the

---

[7] In light of our conclusion here, we do not need to address the Hospital Defendants' remaining challenges to the report. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 n.2 (Tex. 2008).

adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)."). The Texas Supreme Court has instructed us that "trial courts should be lenient in granting 30-day extensions and must do so if deficiencies in an expert report can be cured within the 30-day period." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). The standard is "minimal": an extension to cure "may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.* at 557.

In *Scorseby,* the Texas Supreme Court concluded that "[a]n individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so." *Id*. at 549. Following that dictate, several courts have found that an expert's failure to meet statutory requirements (including an expert's failure to qualify to opine on causation) can potentially be cured on remand. *See Matagorda Nursing & Rehab. Ctr., L.L.C. v. Brooks*, No. 13-16-00266-CV, 2017 WL 127867, at *6–7 (Tex. App.—Corpus Christi Jan. 12, 2017, no pet.) (mem. op.) ("Appellees' failure to show that Dr. Radelat was statutorily qualified to opine on causation does not, by itself, render a 30-day extension unavailable under *Scoresby*."); *Columbia Med. Ctr. of Arlington Subsidiary L.P. v. L.M.*, No. 02-17-00147-CV, 2018 WL

20

1095746, at *4–6 (Tex. App.—Fort Worth Mar. 1, 2018, no pet. h.) (mem. op.) (trial court did not err in granting extension to cure where expert report was deficient because expert was a nurse rather than physician); *Gower v. Univ. Behavioral Health of Denton*, No. 02-16-00245-CV, 2017 WL 3081153, at *11 (Tex. App.—Fort Worth July 20, 2017, no pet.) (mem. op.) ("[O]ur conclusion above that Dr. Borrell failed to establish qualifications to opine about causation does not foreclose Gower's ability to cure the deficiencies in the report."); *Hernandez v. Christus Spohn Health Sys. Corp.*, No. 04-14-00091-CV, 2015 WL 704721, at *4–5 (Tex. App.—San Antonio Feb. 18, 2015, no pet.) (mem. op.) (trial court abused discretion in denying opportunity to cure deficiency "by obtaining a separate report on causation from a qualified expert").

In light of the direction from the Texas Supreme Court, we reverse the trial court's order with regard to Pean's negligence claim and remand to the trial court for proceedings consistent with this opinion. *See* TEX. CIV. PRAC. & REM. CODE §74.351(c); *Scoresby,* 346 S.W.3d at 554–57; *see also Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017) (citations omitted) ("The trial court here must be given the opportunity to consider an extension."); *Leland v. Brandal*, 257 S.W.3d 204, 207–08 (Tex. 2008) (if appellate court finds expert report deficient, statute permits remand to consider 30-day extension to allow plaintiff opportunity to cure deficiency).

                                        Jennifer Caughey
                                        Justice

Panel consists of Justices Higley, Brown, and CaugheyZ.