# NO. 12-19-00405-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SOUTH PLACE SNF, LP,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JOHN HUDSON,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *OPINION*

South Place SNF, L.P. appeals the trial court's denial of its motion to dismiss John Hudson's suit against it. In three issues, South Place contends that the trial court should have dismissed Hudson's suit because it is a heath care liability claim (HCLC), Hudson failed to file the required expert report within 120 days of filing its original answer, and the trial court should have awarded it reasonable attorney's fees and costs. We affirm.

## BACKGROUND

South Place is a skilled nursing and rehabilitation facility. Hudson met with Ashley Koonce, who was his ex-girlfriend and a South Place employee, at the facility's dining room. The purpose of Hudson's visit was to arrange the transfer of their daughter. When Hudson attempted to leave the dining room, he slipped and fell in a puddle of liquid accumulated on the floor. In his original petition, Hudson alleged that South Place violated its duties as a premises owner in the following respects, causing his injuries:

- creating a dangerous condition on its premises,
- failing to reasonably inspect its premises with the unreasonable dangerous condition it created,
- failing to remove the unreasonably dangerous condition and trip hazard created on its premises, and
- failing to warn him of the unreasonably dangerous condition and trip hazard created on it premises.

Six months after it filed an original answer, South Place filed a motion to dismiss Hudson's suit, alleging that his claim is an HCLC and that the claim should be dismissed because he failed to timely serve an expert report as required by the Texas Medical Liability Act (TMLA).[1] In its motion to dismiss, South Place contended as follows:

> Because nursing care is provided to residents in the dining room, [it] had an obligation to meet certain sanitary standards and keep the dining free from foreign substances which could cause unnecessary fall[s] or safety risks to residents. Accordingly, the safety standards upon which plaintiff's claim is based are substantially related to the provision of healthcare by South Place. Plaintiff's claim is, therefore, a healthcare liability claim subject to the expert report requirements of Chapter 74.

After a hearing and considering the pleadings and affidavits filed by each of the parties, the trial court denied South Place's motion to dismiss. This interlocutory appeal followed.[2]

## MOTION TO DISMISS

In its three issues, South Place argues that the trial court should have granted its motion to dismiss based on Hudson's claim being an HCLC, that Hudson failed to timely file his expert report and subsequently, the trial court was required to dismiss his claim and award South Place its attorney's fees and costs. We will consider South Place's three issues together.

**Standard of Review**

Whether a claim is an HCLC under the TMLA is a question of law we review de novo. ***Baylor Scott & White, Hillcrest Med. Ctr., v. Weems***, 575 S.W.3d 357, 363 (Tex. 2019). In making this determination, we consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. ***E. Tex. Med. Ctr. Gilmer v. Porter***, 485 S.W.3d 127, 130 (Tex. App.—Tyler 2016, no pet.). In determining the question, we examine the underlying nature and gravamen of the claim rather than the way it is pleaded. ***Christus Health Gulf Coast v. Carswell***, 505 S.W.3d 528, 534 (Tex. 2016). The burden is on the party seeking dismissal to prove the plaintiff's claim is a HCLC. ***Houston Methodist Willowbrook Hosp. v. Ramirez***, 539 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (b) (West 2017).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2019).

2

**Applicable Law**

An HCLC is a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2017). If a plaintiff asserting an HCLC fails to timely file a compliant expert report and the defendant files a motion to dismiss, the trial court must grant the motion and award reasonable attorney's fees and court costs incurred to the defendant. *See id.* § 74.351(b).

To qualify as an HCLC, a claim alleging departure from safety standards need not be "directly related" to health care, but it must have a "substantive relationship with the providing of medical or health care." ***Ross v. St. Luke's Episcopal Hosp.***, 462 S.W.3d 496, 504 (Tex. 2015). That is, there must be a "substantive nexus between the safety standards allegedly violated and the provision of health care." ***Id.*** The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety. ***Id.*** The following "non-exclusive considerations" are relevant to the determination of whether such a claim is substantively related to the defendant's providing of medical or health care:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

***Id.*** The necessity of expert testimony from a medical or healthcare professional to prove a claim may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or healthcare services. ***Diversicare Gen. Partner, Inc. v. Rubio***, 185 S.W.3d 842, 848 (Tex. 2005).

**Discussion**

Hudson was injured when he slipped on a liquid substance in the facility's dining room. Although disputed, it appears that the substance was urine that leaked from the catheter bag of a patient who ate in the dining room at or near the time of Hudson's fall.[3] South Place concedes that the third and fourth ***Ross*** factors do not apply or favor it in this suit, because Hudson was a visitor to the facility and neither sought nor provided health care. However, it contends that the first, second, fifth, sixth, and seventh factors apply and lead to the conclusion that Hudson's claim is an HCLC.

South Place contends that the first ***Ross*** factor favors it because a patient with a catheter bag is being actively provided medical or health care. We disagree. When South Place physically attached the catheter bag to the patient, it provided medical or health care services at that time. But while the patient wore the catheter bag, none of its employees actively provided medical or health care services at the time of the leak. When a plaintiff alleges injury as a result of a physical condition or defect left on the premises, and "not as a contemporaneous result of someone's negligence," it is a premises liability cause of action. ***United Scaffolding, Inc. v. Levine***, 537 S.W.3d 463, 472 (Tex. 2017) (citing ***Keetch v. Kroger Co.***, 845 S.W.2d 262, 264 (Tex. 1992)). Hudson may have been injured by a condition created by the catheter bag, but he was not injured by any ongoing activity. *See **id**.*; *see also **Sampson v. Univ. of Tex. at Austin***, 500 S.W.3d 380, 391 (Tex. 2016) (It has long been the law in Texas that slip and fall cases have consistently been treated as premises liability cases.).

With reference to the second ***Ross*** factor, South Place contends that patients regularly receive healthcare in the dining area. Specifically, it contends that catheter care is an ongoing activity of receiving medical and health care. But as we previously discussed, the act of wearing a catheter bag is not an ongoing medical or health care activity. In Koonce's affidavit, which is

---

[3] The parties disagree whether the record shows that the substance was urine that leaked from a patient's catheter bag. But even assuming that it was urine that came from the patient's catheter bag, as South Place contends, our analysis of the ***Ross*** factors still leads us to conclude that Hudson's claim is not an HCLC.

included as part of the appellate record, she specifically stated that no South Place staff was with the patient in the dining room prior to or at the time of the fall. It would have been expected that if a South Place staff member had been with the resident providing any medical or health care at the relevant time, the staff member would have immediately taken steps to clean up the catheter bag urine leak. An exhibit to South Place administrator Mimi Cundiff's affidavit, which is part of the appellate record, specifically noted that when the urine leak was discovered after Hudson's fall, South Place staff immediately cleaned it up. A resident who ate lunch while unattended in South Place's dining room is not receiving any special or medical health care as anticipated by the second *Ross* factor.

With reference to the fifth and seventh factors, which we consider together, South Place contends that there are federal and state regulations that require safety and sanitation standards for floors in nursing homes. This was the same argument made before the Texas Supreme Court in *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429 (Tex. 2015). There, water leaked from a restroom, which caused a visitor to slip in the hallway of the healthcare facility. *Id*. at 431. But the supreme court held that state and federal health regulations for nursing home floors did not create an HCLC. *Id*. at 432. We have considered a similar argument with regard to the fifth and seventh *Ross* factors. *See Porter*, 485 S.W.3d at 131-32. We likewise determined that there is nothing about the duties peculiar to a healthcare facility to maintain safe floors free from wet substances that do not also apply to any business open to the public. *See id*. at 133. When the safety standards in a health care facility involve a slip and fall, only its duties as a premises owner are implicated and there is no substantive nexus with the provision of health care. *See Houston Meth. Hosp*., 539 S.W.3d at 499 (holding that allegations concerning slippery floor lack "substantive nexus with providing health care because they are owed by any business premises owner to those lawfully entering the property—they are not unique to health care providers"). As part of this argument, South Place argues that these standards and regulations require it to dispose of bodily fluids, such as urine, that pose unique sanitary and infection risks. These standards to prevent infection are no doubt important. But there is nothing about these standards to prevent infection that are substantively connected to the basis for Hudson's claim separate and apart from any other premises owner's duty to prevent slip and falls by maintaining a dry floor.

Finally, in considering the sixth *Ross* factor, South Place contends that the patient's catheter bag is an instrumentality used to provide health care, and that negligent conduct caused

urine to leak on the floor. Although a catheter bag may generally be an instrumentality used to provide health care, as we earlier stated, the leaky catheter created a dangerous condition on the floor, but this is not substantially related to the active provision of medical or health care. Therefore, although an instrumentality might have been generally involved, there is no substantive nexus between the safety standards allegedly violated and the provision of health care that implicate South Place's duties as a health care provider. *See **Ross***, 462 S.W.3d at 504.

Accordingly, none of the seven ***Ross*** factors favor South Place. Even if the sixth ***Ross*** factor arguably favored South Place, critically, however, there is no substantive nexus between the safety standards allegedly violated and the provision of health care that implicate South Place's duties as a health care provider. *See **id.*** Therefore, we hold that Hudson's claim is not an HCLC, but rather one based on premises liability. Because of our disposition of South Place's first issue, we likewise hold that the trial court properly denied South Place's motion to dismiss and request for attorney's fees and costs. Accordingly, South Place's three issues are overruled.

## DISPOSITION

Having overruled South Place's three issues, we ***affirm*** the trial court's order denying South Place's motion to dismiss Hudson's suit against it.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 31, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2020**

**NO. 12-19-00405-CV**

**SOUTH PLACE SNF, LP,**
Appellant
V.
**JOHN HUDSON,**
Appellee

Appeal from the 392nd District Court
of Henderson County, Texas (Tr.Ct.No. CV19-0123-392)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **SOUTH PLACE SNF, LP,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*