Opinion by Justice Stoddart
Texas Health Resources ("THR") appeals the trial court's order denying its motion to dismiss filed pursuant to the Texas Medical Liability Act. In a single issue, THR asserts the trial court erred by concluding the allegations made by Coming Attractions Bridal and Formal, Inc. ("CABF") do not constitute a "health care liability claim" as defined in Chapter 74 of the Texas Civil Practice and Remedies Code and denying its motion to dismiss. Because we conclude CABF asserts a health care liability claim and it did not serve an expert report on THR as required by the statute, we vacate the trial court's order, dismiss CABF's claims with prejudice, and remand the case to the trial court to determine THR's reasonable and necessary attorney's fees and costs.
BACKGROUND [1]
CABF alleges that during the summer of 2014, the Centers for Disease Control and Prevention, American Hospital Association, and Dallas County Health and Human Services Department warned THR, the owner and operator of Presbyterian Hospital in Dallas, Texas ("Hospital"), there was an imminent threat of a domestic outbreak of the Ebola virus and the Hospital needed to implement measures to care for infected patients to prevent the disease from spreading. The Hospital "negligently failed to heed the warnings" and did not provide its nurses with the necessary training, instruction, and protective equipment to prevent the spread of the disease. THR only provided nominal training and protection against Ebola to its staff.
A patient with the Ebola virus, Thomas Duncan, was admitted to the Hospital in the summer of 2014. Amber Vinson, a nurse at the Hospital, attended to Duncan until his death. After Duncan's death, the Hospital assured Vinson and other nurses they were not at risk for contracting Ebola and "they were free to intermingle with family, friends, and the public at large, despite the nurses' exposure to the dangerously contagious disease." Vinson subsequently traveled to Ohio where she visited CABF, a bridal shop in Akron, to select a dress for her upcoming wedding. After Vinson returned to Dallas, she experienced symptoms of, and was diagnosed with, Ebola. Because Vinson shopped in CABF's store, the health authorities in Ohio mandated CABF close the store for cleaning. When it reopened, CABF was unable to "dispel the perceived Ebola risk and stigma" and the store closed permanently.
*338 CABF sued THR for negligence alleging that THR failed to:
1. act with ordinary care;
2. recognize the likelihood and appreciate the danger of the Ebola virus coming to its hospitals;
3. develop and implement policies and procedures on how to respond to the presence of the Ebola virus in the patient population;
4. ensure that all health care providers were trained on policies and procedures on how to recognize, appreciate, contain and treat the Ebola virus in the patient population;
5. train nurses on proper protection from Ebola ;
6. ensure that the hospitals have appropriate personal protective equipment;
7. notify the appropriate authorities and employ qualified people to manage the Ebola patients;
8. instruct and properly warn its nurses about the dangers of travel and interacting with the public following potential exposure to the Ebola virus; and
9. protect the public from foreseeable harm when it unnecessarily exposed its nurses to the Ebola virus in an unsafe manner and failed to prevent or even warn the exposed nurses from interacting with the public.
CABF also alleged these acts constituted gross negligence and damaged CABF.
THR timely answered and subsequently filed a motion to dismiss based on chapter 74 of the civil practice and remedies code. CABF responded to the motion and argued its case does not present a health care liability claim. Following a hearing, the trial court denied the motion to dismiss. This appeal followed.
LAW & ANALYSIS
The Texas Medical Liability Act ("TMLA") contained in chapter 74 of the civil practice and remedies code governs health care liability claims. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001 -.403. Any claimant who brings suit asserting a health care liability claim must timely serve an expert report for each physician or health care provider against whom a health care liability claim is asserted. See id. § 74.351(a). If the claimant fails to do so, the defendant may file a motion to dismiss the claim with prejudice. See id. § 74.351(b). It is uncontested that CABF did not serve an expert report on THR.
Generally, an appellate court reviews a trial court's ruling on a motion to dismiss under the TMLA for an abuse of discretion. See, e.g. , Bowie Mem'l Hosp. v. Wright , 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). However, when the resolution of an issue on appeal requires the interpretation of a statute, an appellate court applies a de novo standard of review. See, e.g. , Tex. W. Oaks Hosp., LP v. Williams , 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, our aim "is to determine and give effect to the Legislature's intent, and we begin with the plain and common meaning of the statute's words." Id. (internal quotations omitted).
The parties dispute whether CABF's petition presents a health care liability claim ("HCLC"). The TMLA defines a health care liability claim as:
a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, *339 whether the claimant's claim or cause of action sounds in tort or contract.
TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The Texas Supreme Court observed this statutory definition contains three elements:
(1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.
Tex. W. Oaks Hosp. , 371 S.W.3d at 179-80. It is uncontested in this case that THR is a health care provider. Additionally, CABF alleges THR's actions and omissions proximately caused its injury. The parties dispute whether the second element of a HCLC is met. THR argues, among other things, that CABF's claims allege a departure from accepted standards of safety related to health care.
Our focus when determining whether a claim falls under the TMLA, including when we consider whether a plaintiff's allegations present a safety standards-based claim, is "the gravamen of the claim or claims against the health care provider." Id. at 178. The TMLA does not define "safety." The Texas Supreme Court defined the term "according to its commonly understood meaning as the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss." Id. at 184 (internal quotations omitted); see also Ross v. St. Luke's Episcopal Hosp. , 462 S.W.3d 496, 501 (Tex. 2015) ; Safe , BLACK'S LAW DICTIONARY (10th ed. 2014) ("Not exposed to danger; not causing danger"). The court stated the "safety standards referred to in the definition are those that have a substantive relationship with the providing of medical or health care." Ross , 462 S.W.3d at 504. It then concluded that "for a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." Id. That nexus must be more than a "but for" relationship. Id. We look at whether the safety standards allegedly violated "implicate the defendant's duties as a health care provider." Id. at 505.
CABF alleges THR failed to develop and implement policies and procedures to respond to the presence of Ebola in the patient population; ensure all health care providers were trained on policies and procedures to recognize, contain and treat Ebola in the patient population; properly protect nurses from Ebola and ensure the Hospital had appropriate personal protective equipment; and employ qualified people to manage patients with Ebola. The gravamen of CABF's claims is THR failed to create and implement adequate policies to respond to patients infected with the Ebola virus and protect the health care providers treating those patients despite being warned by the Centers for Disease Control and Prevention, American Hospital Association, and Dallas County Health and Human Services Department there was an imminent threat of a domestic outbreak of the Ebola virus and the Hospital needed to implement measures to care for infected patients to prevent the disease from spreading. These allegations are directly related to the provision of health care. See Galvan v. Mem'l Hermann Hosp. Sys. , 476 S.W.3d 429, 432 (Tex. 2015) ("Infection control in a hospital is related to the provision of health care."). The allegations show a substantive nexus between the alleged violations of safety standards and the provision of health care *340 and directly implicate THR's duties as a health care provider. The safety standards that THR allegedly violated arise directly from its professional duties as a health care provider. They are not the types of duties that arise in an ordinary negligence case.
When a plaintiff only alleges ordinary negligence against a health care provider, courts have concluded the plaintiff did not assert a safety standard-based HCLC. Those cases generally involve injuries related to the health care provider's duties as a premises owner-duties owed by any business premises owner to those lawfully entering the property-and wholly unrelated to the rendition of health care. Because there was no substantive nexus between the safety standards allegedly breached and the provision of healthcare in those cases, the claims were not considered HCLCs. See, e.g. , Ross , 462 S.W.3d at 498 (hospital visitor slipped and fell in hospital lobby); Galvan , 476 S.W.3d at 430 (visitor slipped and fell in hospital hallway); KSADD, LLC v. Williams , No. 05-15-00776-CV, 2016 WL 4385794, at *3 (Tex. App.-Dallas Aug. 17, 2016, no pet.) (mem. op.) (automatic doors malfunctioned injuring visitor to surgery center); Methodist Hosps. of Dallas v. Garcia , No. 05-13-01307-CV, 2014 WL 2003121 (Tex. App.-Dallas May 14, 2014, no pet.) (mem. op.) (hospital visitor injured when elevator fell from second floor to first floor). Unlike the allegations of ordinary negligence in these cases, CABF's allegations are not merely related to THR's duties as a premises owner or wholly unrelated to the rendition of health care. THR's alleged negligence is based on safety standards uniquely arising from professional duties owed as a health care provider.
We conclude CABF alleges departures from safety standards that implicate THR's duties as a health care provider. CABF asserts a HCLC.
Our conclusion is further supported by the Texas Supreme Court's non-exclusive list of considerations for analyzing whether a claim is substantively related to a health care provider's provision of medical or health care and, therefore, a HCLC. Ross , 462 S.W.3d at 505. Those factors are:
1. did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
2. did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
3. at the time of the injury was the claimant in the process of seeking or receiving health care;
4. at the time of the injury was the claimant providing or assisting in providing health care;
5. is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;
6. if an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; and
7. did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?
Id.
Three of the factors support our conclusion that CABF asserts a safety standards-based HCLC, three factors do not, and one does not apply because no instrumentality was involved in the alleged *341 negligence. As to the first factor, CABF alleges THR failed to "develop and implement policies and procedures on how to respond to the presence of the Ebola virus in the patient population" and "employ qualified people to manage the Ebola patients." These allegations assert THR's alleged negligence occurred in the course of THR performing tasks with the purpose of protecting patients from harm. The fifth factor, considering whether the alleged negligence is based on safety standards arising from the professional duties owed by the health care provider, also weighs in favor of finding CABF asserts a safety standards-based HCLC. The gravamen of CABF's claims is THR failed to create and implement adequate policies to respond to patients infected with the Ebola virus and protect the health care providers treating those patients despite being forewarned of the threat. Finally, CABF alleges the Centers for Disease Control and Prevention and Dallas County Health and Human Services Department warned THR about an imminent threat of a domestic outbreak of the Ebola virus and the Hospital needed to implement measures to care for infected patients to prevent the disease from spreading. CABF asserts THR failed to heed these warnings and take action to comply with the safety-related requirements set forth by these governmental entities. Thus, the seventh factor weighs in favor of concluding CABF asserts a HCLC. Conversely, we recognize CABF's alleged injuries did not occur where patients might be during the time they are receiving care, and CABF was not in the process of seeking, receiving, providing, or assisting in providing health care when it was allegedly injured. Thus, the second, third, and fourth factors weigh against concluding CABF asserts a HCLC. While not all of the Ross factors indicate that CABF asserts a safety standards-based HCLC, the factors that do weigh strongly in favor of our conclusion.
CABF argues it is not subject to the TMLA because it is not a "claimant" as defined in the statute and only claimants are required to serve expert reports on health care providers. CABF asserts only a natural person can be a "claimant." The statute defines a claimant as:
a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant.
TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2). For CABF to fall within the definition of claimant subject to the expert report requirement, it must fall within the definition of "person."
Because the TMLA does not define the word "person," it must be given its common law meaning. Tex. W. Oaks Hosp. , 371 S.W.3d at 178 (citing TEX. CIV. PRAC. & REM. CODE § 74.001(b) ). The common law definition of person is a human being and an "entity (such as a corporation) that is recognized by law as having most of the rights and duties of a human being." Person , BLACK'S LAW DICTIONARY (10th ed. 2014). We assume the Legislature was aware of the common law meaning of the term "person" at the time it enacted the TMLA. See BCCA Appeal Group, Inc. v. City of Houston , 496 S.W.3d 1, 15 (Tex. 2016) (citing Acker v. Tex. Water Comm'n , 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the [L]egislature with complete knowledge of the existing law and with reference to it.") ). Because the common law definition of person includes an entity such as CABF, we conclude CABF falls within the term claimant as defined in chapter 74.[2] In *342 so concluding, we recognize that CABF does not assert a typical health care liability claim. But, as we have discussed, the Legislature did not specifically exclude entities such as CABF from the statute's purview. Until the Legislature does so, we must apply the statutory language as written. See City of Rockwall v. Hughes , 246 S.W.3d 621, 629 (Tex. 2008) ("[O]ur standard for construing statutes is not to measure them for logic [but to] construe [them] to effectuate the intent of the Legislature, with the language of the statute as it was enacted to be our guide unless the context or an absurd result requires another construction."); Jones v. Del Andersen & Assocs. , 539 S.W.2d 348, 350 (Tex. 1976) (courts may not read into statutes "words which are not there.").
CONCLUSION
Based on the statutory definition of HCLC and the Texas Supreme Court's application of chapter 74, including the Ross factors, we conclude CABF asserts an action against a health care provider for a claimed departure from accepted standards of safety which proximately resulted in injury to a claimant. See TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).
Therefore, we conclude CABF was required to timely serve an expert report on THR and it failed to do so. We vacate the trial court's order denying THR's motion to dismiss, dismiss CABF's claims with prejudice, and remand the case to the trial court to determine THR's reasonable and necessary attorney's fees and costs.

The factual statements are drawn from CABF's original petition, which was its live pleading at the time of the motion to dismiss.

Our conclusion that the term "claimant" applies to entities as well as natural persons also is supported by the legislative history of the TMLA. Prior to 2003, the statute used the term "patient." However, as part of the 2003 changes, the Legislature replaced the term "patient" with "claimant" in the definition of a HCLC. Compare Tex. Civ. Prac. & Rem. Code § 74.001(a)(13), with Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(4) (repealed 2003). By changing the term patient to claimant and defining claimant as a person, the Legislature expanded the breadth of HCLCs beyond the patient population. Tex. W. Oaks Hosp. , 371 S.W.3d at 178. "This in turn necessarily widened the reach of the expert report requirement, unless otherwise limited by other statutory provisions." Id. If we concluded that only a natural person could be a claimant as defined in the statute, we would narrow the breath of HCLCs, which was not the intent of the Legislature.