# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0591

═══════════

COMING ATTRACTIONS BRIDAL AND FORMAL, INC., PETITIONER,

v.

TEXAS HEALTH RESOURCES, RESPONDENT

═══════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

═══════════════════════════

**Argued November 7, 2019**

JUSTICE BLAND delivered the opinion of the Court.

In September 2014, the Dallas Presbyterian Hospital cared for a patient who was infected with the Ebola virus. A nurse who attended the patient at the hospital later visited a bridal shop in Ohio. Upon returning to Dallas, the nurse became ill. She was diagnosed as having contracted the virus and recovered after medical treatment.

Ohio health authorities learned that the nurse who had contracted the virus had visited the bridal shop. Those authorities required the shop to close to prevent the virus's spread. After cleaning the shop to guard against contamination, the shop's corporate owner reopened it briefly. But the owner later closed the shop permanently when its business did not recover. The owner sued the hospital, alleging that the hospital failed to prevent transmission of the Ebola virus to the

nurse through proper precautions and training, and that the hospital's negligence caused the shop to close due to health concerns and adverse publicity.

The Texas Medical Liability Act requires that a "claimant" alleging a "health care liability claim" against a health care provider, like the hospital, must submit an expert report detailing a factual basis for, and a qualified opinion in support of, the claim. TEX. CIV. PRAC. & REM. CODE § 74.351(a). The expert must state a fair summary of the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[1]

Invoking the statute, the hospital moved to dismiss the claims against it when no report was filed. The trial court denied the motion. The court of appeals reversed, reasoning that a corporation alleging a health care liability claim falls within the statute's definition of "claimant," and the allegations in this case state a health care claim against the hospital. We agree and therefore affirm.

## I

Coming Attractions Bridal and Formal, Inc. owned a bridal clothing business in Akron, Ohio. During the summer of 2014, the Center for Disease Control warned of a domestic Ebola virus outbreak. It urged hospitals to prepare to treat the disease and prevent its spread. Texas Health Resources owns and operates the Dallas Presbyterian Hospital. In September 2014, the hospital cared for a patient who was infected with Ebola; the patient died. Amber Vinson, a nurse at the hospital, attended the patient.

---

[1] TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

Coming Attractions alleges that hospital officials assured Vinson that it was safe for her to go out in public. Relying on the hospital's assurances, Vinson traveled to Akron and visited Coming Attractions' bridal shop. Upon returning to Dallas, Vinson became ill and was diagnosed with the Ebola virus. Upon learning that Vinson had visited the shop, Ohio health authorities required Coming Attractions to temporarily close it to prevent the virus's spread. Coming Attractions cleaned its store and reopened for business in November 2014. But Coming Attractions alleges that continued fear of Ebola contamination forced it to permanently close.

Coming Attractions sued Texas Health Resources. It alleged that the hospital "controlled the 'Ebola response' and management of employees who experienced exposure to the virus at the hospital." And, in not preventing the spread of the disease, it alleged that the hospital was negligent by failing to:

- recognize the danger of the Ebola virus coming to its hospitals;
- develop and implement policies and procedures on how to respond to the presence of the Ebola virus in the patient population;
- ensure that all health care providers were trained on policies and procedures on how to recognize, appreciate, contain and treat the Ebola virus in the patient population;
- train nurses on proper protection from Ebola;
- ensure that the hospital had appropriate personal protective equipment;
- notify the appropriate authorities and employ qualified people to manage Ebola patients;
- instruct and warn its nurses about the dangers of travel and interacting with the public following potential exposure to the Ebola virus; and
- protect the public from foreseeable harm when it unnecessarily exposed its nurses to the Ebola virus in an unsafe manner and failed to prevent or warn the exposed nurses from interacting with the public.

Coming Attractions alleges that these acts and omissions proximately caused its damages. But it did not provide a chapter 74 expert report supporting its allegations.

3

The hospital moved to dismiss this lawsuit under chapter 74, asserting that Coming Attractions alleged a health care liability claim and did not provide a report. Coming Attractions responded that chapter 74 is limited to patient claims and, because it is a corporation, Coming Attractions is not a "claimant" covered by the statute. It further responded that its claims are not health care liability claims as the statute defines them.

The trial court denied the motion. The court of appeals reversed, holding that Coming Attractions is a "claimant" under the statute, and that its claim against the hospital is a health care liability claim as the statute defines it. Because Coming Attractions did not file the required expert report, the court of appeals dismissed the lawsuit.[2] We granted review.

## II

Section 74.001(a)(2) defines a "claimant" as a person, including an estate, who seeks damages for a health care liability claim:

> a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant.[3]

An earlier version of the Act limited the definition of "health care liability claim" to a claim brought by a "patient."[4] When the legislature revised the statute in 2003, it replaced the word

---

[2] 552 S.W.3d 335, 342 (Tex. App.—Dallas 2018).

[3] TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2).

[4] The Texas Medical Liability and Insurance Improvement Act (TMLIIA), the predecessor to the TMLA, defined a "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the *patient*, whether the *patient's* claim or cause of action sounds in tort or contract.

TEX. REV. CIV. STAT. art. 4590i, § 1.03(a)(4) (emphasis added), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

"patient" in the definition of "health care liability claim" with "claimant."[5] By changing "patient" to "claimant" and defining "claimant" to be a "person," including an estate, who seeks damages for a health care claim, the legislature expanded the statute beyond patient claims.[6]

Coming Attractions nonetheless contends that "person" in this context is limited to human beings and does not include corporations. We reject this contention for two reasons. First, the legislature has directed that the definition of "person" includes a corporation, "unless the statute or context in which the word or phrase is used requires a different definition."[7] Second, the common-law meaning of "person" includes a corporation, and because the Act does not otherwise define "person," we use the common-law meaning of "person" in interpreting it.[8]

Coming Attractions further argues that the second sentence of the definition of "claimant" informs a reading that excludes a corporation. The second sentence clarifies that multiple "persons" are a single "claimant" if their damages "result [from] the bodily injury or death of a single person."[9] Although the sentence clarifies who counts together as one "claimant" when multiple persons and an estate claim through the same person, it neither restricts the definition of

---

[5] *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177–79 (Tex. 2012); *compare* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13), *with* TEX. REV. CIV. STAT. art. 4590i, § 1.03(a)(4) (repealed 2003). When the legislature replaced the TMLIIA with the TMLA in 2003, it also expanded "health care liability claims" to include "departure[s] from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 726 (Tex. 2013) (quoting TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)).

[6] *Williams*, 371 S.W.3d at 178.

[7] TEX. GOV'T CODE § 311.005(2).

[8] *See Williams,* 371 S.W.3d at 178 ("'Person' is not defined in the TMLA and therefore must be given its common law meaning." (citing TEX. CIV. PRAC. & REM. CODE § 74.001(b))); *see also Person*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "person" as a "human being," "[t]he living body of a human being," and "[a]n entity (such as a corporation) that is recognized by law as having most of the rights and duties of a human being").

[9] TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2).

"person" to a human being nor limits a claimed injury to a bodily injury.[10] Rather, the definition expressly contemplates that claimants can be legal entities by including, as an example, a decedent's legal estate.[11] Because the statute does not confine claimants to "human beings" or "patients" we have held that, if the plaintiff "is asserting a health care liability claim, then he is a 'claimant' even though [the plaintiff] was not [a] patient or the patient's representative."[12] Accordingly, we hold that Coming Attractions is a claimant under the Act if it has alleged a health care liability claim.

### III

Coming Attractions asserts that it has not alleged a health care liability claim because: (1) its allegations do not have a substantive nexus with the hospital's health-care-provider duties, and (2) it alleges purely economic damages, and a health care liability claim requires a claim for personal or non-economic damages.

### A

As to the first consideration, a "health care liability claim" includes a claim based on alleged departures from accepted safety, professional, or administrative standards, directly related to health care, that cause an injury to a claimant:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or

---

[10] *Id.*; *see Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 364 n.22 (Tex. 2019) ("[T]he Act's singular reference to 'bodily injury' . . . does not limit its application to bodily injury claims, but rather uses the term as a condition that triggers a specific consequence." (citations omitted)).

[11] *Williams*, 371 S.W.3d at 179 ("Not only is the term 'patient' not included within the definition of 'claimant,' the Legislature used the term 'including' to precede the reference to a decedent's estate. This renders any components of the definition nonexclusive." (citations omitted)).

[12] *Weems*, 575 S.W.3d at 363–64 & n.19 (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2); *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 537 (Tex. 2016); *Williams*, 371 S.W.3d at 174; and *Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 725 (Tex. 2013)).

6

health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.[13]

In determining whether the claims alleged in this case fall within this definition, the parties focus us on departures from accepted standards of "safety or professional or administrative services directly related to health care."[14]

The Act does not define "safety," or a safety standard. We defined the word under the earlier version of the statute: "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'"[15] And in *Ross v. St. Luke's Episcopal Hospital*, we explained that "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care."[16] A substantive nexus is not established merely because the claim is brought against a health care provider.[17] Rather, the alleged departures from safety standards must have a nexus to health care.[18]

---

[13] TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *see Williams*, 371 S.W.3d at 179–80 ("[A health care liability claim] contains three basic elements: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.").

[14] TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

[15] *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) (quoting *Diversicare Gen. Partner., Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)); *see also Safe*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Not exposed to danger; not causing danger . . . .").

[16] *Ross*, 462 S.W.3d at 504; *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10) ("'Health care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.").

[17] *See Ross*, 462 S.W.3d at 505 ("The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety."); Paula Sweeney, *Definitions Under Chapter 74*, 51 TEX. TECH. L. REV. 745, 757–61 (2019) (surveying cases where claims were found to "be beyond the ambit of Chapter 74").

[18] *Williams*, 371 S.W.3d at 178 ("With the exception of medical care and health care claims, our focus in determining whether claims come under the TMLA is not the status of the claimant, but the gravamen of the claim or claims against the health care provider."); *see also Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019) (same).

Coming Attractions stresses that its injury stems from the hospital's alleged assurance to Vinson—a hospital employee, not a patient—that she was safe to travel. This allegation does not share a substantive nexus with the hospital's health-care-provider duties, it argues, because the patient who was infected with Ebola had died, and the hospital's negligent act occurred after the hospital's duties as a health care provider to that patient had ended.

A hospital's alleged negligence in controlling the spread of a virus to its nursing staff and the public, however, implicates safety standards directly related to health care—the care and treatment of an infected patient.[19] As Coming Attractions expressly alleges, Vinson's infection with the virus implicates whether the hospital developed and implemented training, treatment, and infection control policies.[20] Coming Attractions further alleges that the hospital failed to protect the public when it "unnecessarily exposed its nurses to the Ebola virus in an unsafe manner and failed to prevent or even warn the exposed nurses from interacting with the public." When allegations, like these, implicate safety standards, it matters not that the claim arose after the death of the patient.[21]

The risk of contamination that Vinson presented to the public implicates the execution of the hospital's health-care-provider duties. Coming Attractions claims its injury by or through

---

[19] *Galvan v. Mem'l Hermann Hosp. Sys.*, 476 S.W.3d 429, 432 (Tex. 2015) (per curiam) ("Infection control in a hospital is related to the provision of health care.").

[20] *See Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 726 (Tex. 2013) ("[P]roviding a safe workplace . . . [for] caregiver[s] at a psychiatric facility [is] integral to the patient's care . . . ." (citing *Williams*, 371 S.W.3d at 182)).

[21] *CHRISTUS Health Gulf Coast v. Carswell,* 505 S.W.3d 528, 535 (Tex. 2016) ("As to a claim based on professional or administrative services, the statute does not require that the person alleging injury was a patient during the relevant period. Neither does it require that the alleged injury must have occurred during or contemporaneously with health care, nor that the alleged injury was caused by health care. Rather, the Act applies to a claim for injury or death proximately caused by a 'departure from accepted standards of medical care, or health care, or safety or professional or administrative services *directly related to* health care.'" (quoting Tex. Civ. Prac. & Rem. Code § 74.001(a)(13))).

Vinson's physical injury, which resulted, it alleges, from the hospital's negligence in failing to protect its employees from the Ebola outbreak. The question of contagion and its prevention in a hospital setting directly relates to public health and health care. Coming Attractions' pleadings bear this out. It alleges that the hospital was negligent when it (1) failed to develop and implement policies and procedures on how to respond to Ebola, (2) failed to train its health care staff on how to contain and treat the virus, (3) failed to ensure that it had appropriate protective equipment, (4) failed to have qualified people manage the infected patient, and (5) unnecessarily and unsafely exposed its nurses to the virus. These allegations concern the hospital's Ebola treatment and infection-control procedures (or the lack thereof). We have recognized that treating and preventing a communicable disease in a hospital setting is a duty related to the provision of health care. [22]

A substantive nexus exists between this health-care-provider duty and Coming Attractions' claimed injury—that its store was exposed to the virus through Vinson, contaminated, and forced to close. Coming Attractions' allegations implicate "safety or professional and administrative

---

[22] *Weems*, 575 S.W.3d at 363–64; *see also Williams*, 371 S.W.3d at 181 (recognizing that a health care provider's "'training and staffing policies . . . are integral components of [the provider's] rendition of health care services'" (quoting *Rubio*, 185 S.W.3d at 850)); *Galvan*, 476 S.W.3d at 432 ("Infection control in a hospital is related to the provision of health care."); 25 TEX. ADMIN. CODE § 133.41(g) ("The hospital shall provide a sanitary environment to avoid sources and transmission of infections and communicable diseases. There shall be an active program for the prevention, control, and surveillance of infections and communicable diseases.").

services directly related to health care"—avoiding transmission of a communicable disease.[23] Accordingly, we conclude that Coming Attractions asserts a health care liability claim.[24]

**B**

Second, Coming Attractions contends that, because it alleges economic damages, and not a physical injury, its claim falls outside the statute.[25] We have held, however, that claims alleging the negligent provision of health care fall within the Act when the alleged damages stem from health-care-related claims, regardless of the type of injury alleged.[26]

The Act's definition bears this out: it neither qualifies the type of "injury," nor limits the definition of injury to bodily injury.[27] In other provisions of chapter 74, the legislature

---

[23] "Professional or administrative services" are defined as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(24). "'Directly related' means an 'uninterrupted, close relationship or link between the things being considered.'" *Weems*, 575 S.W.3d at 365 (quoting *Carswell,* 505 S.W.3d at 536). To maintain its accreditation, a hospital "shall ensure that policies governing prevention, control and surveillance of infections and communicable diseases are developed, implemented and enforced." 25 TEX. ADMIN. CODE § 133.41(g)(1). Controlling the spread of a virus directly impacts the care and treatment of an infected patient. *See Galvan*, 476 S.W.3d at 432.

[24] *See Weems*, 575 S.W.3d at 363–64; *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504–05 (Tex. 2015).

[25] *Compare* TEX. CIV. PRAC. & REM. CODE § 41.001(4) ("'Economic damages' means compensatory damages intended to compensate a claimant for actual economic or pecuniary loss . . . ."); *with id.* § 41.001(12) ("'Noneconomic damages' means damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages."); *see also id.* § 74.001(a)(6) (providing that, for purposes of chapter 74, the term "economic damages" has the meaning assigned by section 41.001); *id.* § 74.001(a)(20) (providing that, for purposes of chapter 74, the term "noneconomic damages" has the meaning assigned by section 41.001).

[26] *Carswell*, 505 S.W.3d at 537 (holding that despite the claimant not being a patient, her post-mortem fraud claim was a healthcare liability claim because the Act applies "when the claimed injury is directly related to health care of *some* patient" (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10), (13))).

[27] *See Weems*, 575 S.W.3d at 364 n.22; TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) (providing that a health care liability claim may sound in either tort or contract and providing no limiting qualification on the type of injury).

distinguishes between a "bodily" injury and "non-economic damages," but not in the definition of claimant.[28] We do not imply the term where the legislature did not use it.[29]

Coming Attractions posits that requiring an expert report for purely economic damages does not align with the Act's purpose: to combat "a medical malpractice insurance crisis."[30] The court of appeals in *PM Mgm't-Trinity NC, LLC v. Kumets* relied on this rationale to conclude that a health care liability claim requires allegations that "involve some type of personal injury."[31] But, as the court of appeals in that case noted, the Act governs economic and non-economic damages, belying this rationale. Regardless of the damage alleged, the expert report requirement furthers the Act's objective that "only meritorious causes of action proceed" against health care providers.[32]

---

[28] *Ahmad H. Ahmadi, M.D., P.L.L.C. v. Moss*, 530 S.W.3d 754, 760 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see* TEX. CIV. PRAC. & REM. CODE § 74.004(a) ("Notwithstanding any other law, Sections 17.41–17.63, Business & Commerce Code, do not apply to physicians or health care providers with respect to claims for damages for *personal* injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider." (emphasis added)); *id.* § 74.001(a)(2) ("All persons claiming to have sustained damages as the result of the *bodily* injury or death of a single person are considered a single claimant." (emphasis added)). The phrases "economic damages" and "non-economic damages" are also defined under chapter 74. *Moss*, 530 S.W.3d at 760 (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(6), (20)).

[29] *See Weems*, 575 S.W.3d at 364 n.22 ("When the Legislature uses a word or phrase in one portion of a statute but excludes it from another, the term should not be implied where it has been excluded." (quoting *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011))).

[30] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(a)(5), 2003 Tex. Gen. Laws 847, 884; *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

[31] *PM Mgm't-Trinity NC, LLC v. Kumets*, 368 S.W.3d 711, 719 (Tex. App.—Austin 2012), *aff'd in part, rev'd in part on other grounds*, 404 S.W.3d 550 (Tex. 2013) (per curiam); *see also McAllen Hosps., L.P. v. Gomez*, No. 13-12-00421-CV, 2013 WL 784688, at *4–5 (Tex. App.—Corpus Christi-Edinburg, Feb. 28, 2013, no pet.) (mem. op).

[32] *Williams*, 371 S.W.3d at 190; *Samlowski v. Wooten*, 332 S.W.3d 404, 416 (Tex. 2011) ("A core purpose of [the Act] was to identify and eliminate frivolous health care liability claims expeditiously, while preserving those of potential merit.").

## C

Finally, "if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, then the claim is a health care liability claim."[33]

To prevail at trial, Coming Attractions would have to establish through expert medical testimony that the hospital's training, treatment, and infection control policies departed from the appropriate health-care-provider standards of care, and that these departures proximately caused contamination of the shop, posing a health danger to its patrons. Because medical experts must discuss the hospital's departure from safety standards associated with treating and preventing the spread of the Ebola virus, a report was required.

In such a report, a qualified expert[34] would detail the hospital's failure to implement appropriate Ebola treatment, training, and infection control policies, and the circumstances necessary for an infected person to contaminate a store.[35]

The causal link that an expert must supply is the link between the hospital's negligence and the contamination of the store—and the corresponding risk that the disease will spread—not to the

---

[33] *Williams*, 371 S.W.3d at 182.

[34] *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(B), (C); *see also id.* § 74.402(b)(1)–(3).

[35] TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) (providing that a qualified expert must detail the "applicable standard of care," how the "physician or health care provider failed to meet [that standard]," and discuss the causal relationship from a breach of the appropriate standard to the damages claimed); *see Van Ness v. ETMC First Physicians,* 461 S.W.3d 140, 141–42 (Tex. 2015) (per curiam) ("A report is a good faith effort if it provides adequate information to 'inform the defendant of the specific conduct the plaintiff has called into question, . . . provide[s] a basis for the trial court to conclude that the claims have merit,' . . . and 'does not contain a material deficiency.'" (first quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); and then quoting *Samlowski*, 332 S.W.3d at 410)).

loss of business that allegedly stemmed from this contamination.[36] Expert testimony about lost business value is beyond the scope of the Act. The root cause of this business's loss—the hospital's alleged failure to prevent the spread of disease, resulting in contamination of the shop—is not.

* * *

Coming Attractions alleges that the hospital's departure from accepted safety standards—standards directly related to caring for and treating a patient with a communicable disease—caused its injury. When brought against a hospital, we hold that these allegations state a health care liability claim under the Act. Accordingly, we affirm the judgment of the court of appeals.[37]

_____
Jane N. Bland
Justice

OPINION DELIVERED: February 21, 2020

---

[36] TEX. CIV. PRAC. & REM. CODE § 74.351(j) ("Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.").

[37] *Id.* § 74.351(a), (b).