**Dissenting Opinion Filed May 3, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00827-CV

**CHRISTINE FABER, INDIVIDUALLY AND AS HEIR AT LAW OF CARMELINA "MILLIE" SMITH, DECEASED, Appellant**
**V.**
**COLLIN CREEK ASSISTED LIVING CENTER, INC. D/B/A/ DAYSPRING ASSISTED LIVING COMMUNITY, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-02547-2015**

## DISSENTING OPINION
Opinion by Justice Reichek

Because I conclude well-established Texas law dictates that the claims brought by Christine Faber on behalf of herself and her mother, Carmelina "Millie" Smith, are health care liability claims (HCLCs) under the Texas Medical Liability Act (TMLA), I respectfully dissent.

Collin Creek Assisted Living Center Inc. d/b/a Dayspring Assisted Living Community ("Collin Creek") is a Type B assisted living facility that is licensed under Chapter 247 of the Texas Health and Safety Code. As such, it is a "health care provider" within the meaning of the TMLA. TEX. CIV. PRAC. & REM. CODE ANN.

§74.001(a)(11)(B), (a)(12)(A)(vii). The TMLA broadly defines "health care" to include "any act . . . performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id*. § 74.001(a)(10).

An HCLC is defined as any "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id*. § 74.001(a)(13). Within the TMLA's definition of an HCLC, the phrase "directly related to health care" modifies professional or administrative services, but not the word "safety." *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012). Despite this, the Texas Supreme Court has observed that the safety standards referred to in the definition must still have a "substantive relationship" with the provision of medical or health care. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). Thus, in determining whether a safety standards-based claim is an HCLC, the pivotal issue is "whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id*. at 505. To aid in this determination, the supreme court articulated in *Ross* seven non-exclusive factors to consider:

1. Did the defendant's alleged negligence occur while the defendant was performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; and

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies.

*Id*. at 505.

The majority's position is simple: since Faber has now cast her claims as premises liability based on the condition of the sidewalk rather than negligence based on the conduct of Collin Creek's staff, her lawsuit does not implicate a health care provider's conduct during the course of Smith's care, treatment, or confinement. Therefore, according to the majority, Faber's claims are not HCLCs. But, as the Texas Supreme Court has explained, a plaintiff may not use artful pleading to simply recast claims in an attempt to remove a suit from the scope of the TMLA. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005). When

–3–

analyzing whether a claim is an HCLC we "consider the entire court record, including the pleadings, motions, and responses, and relevant evidence properly admitted," as well as "the overall context of the plaintiff's suit, including the nature of the factual allegations in their pleadings, [the defendant's] contentions, and the motions to dismiss and responses." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258–59 (Tex. 2012). The facts that form the basis of Faber's suit show that Smith did not simply trip over a crack in the sidewalk. Instead, she fell because a staff member of the health care institution in which she resided pushed her over a crack in the sidewalk while she was seated in a wheeled walker causing her to fall. Because of this, Faber's claim is inextricably intertwined with the conduct of, and duties owed by, Collin Creek as a health care provider. Although the majority would have us completely ignore the critical role of the health care provider and the provision of health care in the events giving rise to Smith's fatal injuries, long-standing case law does not permit us to do so. *See id*. at 255 (facts cannot be divided to separate HCLC from another type of claim).

The pleadings and evidence establish that, while residing at Collin Creek, Smith used a wheeled walker with a seat to ambulate. On May 25, 2014, Faber asked a Patient Care Assistant ("PCA")[1] employed by Collin Creek to assist Smith to her car so that she could take Smith to an appointment. In fulfilling this request, the

---

[1] The "PCA" is described as both a "Patient Care Assistant" and "Personal Care Assistant" at various points in the parties' briefing and in the record.

PCA seated Smith backwards on her walker and used the walker as a make-shift wheelchair to wheel her out to the parking lot. While en route to Faber's car, which was parked in a wheelchair-accessible parking spot in front of the facility, the PCA pushed the walker with Smith seated on it over a large crack in the sidewalk wheelchair ramp.[2] The walker became caught in the crack, causing Smith to fall and hit her head on the concrete. Smith sustained fatal injuries as a result of the fall. These facts demonstrate that the PCA's choice to transport Smith using her walker as a wheelchair, along with the PCA's act of rolling the walker over the crack in the sidewalk, are integral and inextricable parts of the suit regardless of how the majority chooses to characterize the "gravamen" of Faber's claim. A jury will be required to consider more than just whether the crack presented a hazard. They will necessarily have to consider the PCA's actions and the risks associated with the choices the PCA made. *See Se. Tex. Cardiology Assocs. v. Smith*, 593 S.W.3d 743, 748–49 (Tex. App.—Beaumont 2019, no pet.) Unlike the premises liability cases upon which the majority relies, it is clear that the health care provider's conduct in the course of providing health care was a factor in causing the injury at issue. Claims based on facts that *could* support claims against a health care provider for departures from accepted standards of safety are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of that standard. *Loaisiga*, 379 S.W.3d at 255.

---

[2] The incident was captured on video, which Collin Creek submitted in support of its motion to dismiss.

As noted above, Collin Creek is a Type B assisted living facility. In contrast to a Type A assisted living facility, where residents must be physically capable of evacuating the facility without physical assistance from staff, residents of Type B facilities may require staff assistance to evacuate and may require assistance transferring to and from a wheelchair. 26 TEX. ADMIN. CODE § 553.3(b)(1), (c)(1), (4).[3] Because Smith resided in a Type B facility, a resident assessment and individual service plan was required to be completed for her. 40 TEX. ADMIN. CODE § 92.41(c). Smith's resident assessment reflected that she had fallen at least once within the prior twelve months, and her mobility was "not always reliable," meaning she "require[d] staff to provide stand by assistance while ambulating; [and she] require[d] assistance from staff to and from meals and activities." Faber's request that the PCA assist Smith to her car supports the conclusion that Smith sometimes required assistance to walk. It is undisputed that Collin Creek was obligated to provide these services to Smith to protect her from harm and that they were, in fact, doing so at the time she fell.[4] The first *Ross* factor, therefore, supports the conclusion that Faber has asserted an HCLC.

---

[3] *See also* 40 TEX. ADMIN. CODE §§ 46.41(a), (b)(1)(H) (requiring Type B facilities to provide assistance transferring patients and with their ambulation) and (b)(3) (discussing Type B facility transport and escort requirements).

[4] The majority suggests this suit does not present an HCLC because if Faber had been pushing Smith in the wheeled walker, the TMLA would not be implicated. This type of argument has been made and rejected before. *See Taton v. Taylor*, No. 02-18-00373-CV, 2019 WL 2635568, at *5–6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (argument that providing transportation no different than service provided by Uber or Lyft ignores injured person's status as patient and status of party providing transport as health care provider). The fact that the service at issue could also be provided by someone who isn't a

Smith's injuries also occurred in a place where patients of a Type B facility might be during the time they were receiving care. Unlike a convalescence or nursing facility, the sine qua non of an assisted living facility is a resident's right to remain a part of the community beyond the facility. *See* TEX. HEALTH & SAFETY CODE § 247.064 (b)(8) (resident has right to highest level of independence, autonomy, and interaction with community of which resident is capable). This point was made by the Executive Director of Collin Creek, who testified as follows:

> I have knowledge a wheel became jammed in a large seam in the concrete sidewalk outside DaySpring's front entrance. This is a location where DaySpring's residents are commonly transported and transferred into vehicles so they may attend activities in the outside community. It was a path where residents gained access to a car for handicap accessibility. . . . DaySpring had an obligation to prevent falls in this area of the front entrance when staff assistance is requested. For many residents, Personal Care Assistants, along with assistive devices, are provided to prevent falls when residents are cared for in this area outside the front entrance.

Thus, Smith's injuries occurred in a place where patients might be during the time they were receiving care, and this factor weighs in favor of a finding of an HCLC as well.

---

healthcare provider does not mean that the TMLA is not implicated when the service is being provided by a healthcare provider in the course of providing healthcare. The majority also wishes to rely upon a written assessment of Smith as having independent mobility to somehow discount the fact that mobility assistance was both requested and being provided at the time of the accident. We cannot ignore the actual facts of this case to reach a desired result.

Providing for patient safety is a part of health care. *Ross*, 462 S.W.3d at 505. As described above, the PCA was providing for Smith's safety by assisting her to Faber's car. Therefore, Smith was receiving health care at the time of her injury.

The majority opinion suggests in a footnote that a contractual disclaimer of the provision of health care services to Smith may deprive Collin Creek of the benefits of the TMLA. However, Collin Creek is, by definition, a "health care provider" under the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(11), (12). The disclaimer to which the majority refers makes clear that Collin Creek provides "acts of a protective nature" as well as "personal care," which means "supervision or assistance with routine living functions in instances of a resident's condition necessitating such supervision or assistance."[5] In addition, the "Resident's Admission Agreement" between Collin Creek and Smith provided that "[t]he parties to this agreement understand that this facility provides lodging, board, housekeeping, *personal care and supervision services* to the resident in accordance with the laws and regulations of the state of Texas." (Emphasis added.) The PCA's actions in assisting Smith were nothing if not "acts of a protective nature" and "supervision or assistance with routine living functions." Faber's claim, although asserted as a premises liability claim, is factually a cause of action based on safety

---

[5] This contractual disclaimer simply reflects that Collin Creek is not a convalescence or nursing facility within the meaning of Chapter 242 of the Texas Health and Safety Code but is, instead, an assisted living facility under Chapter 247 of the Code, a truism that nobody disputes and does not affect the analysis.

standards arising from professional duties owed by Collin Creek as a health care provider.

Texas courts, including this Court, have consistently recognized that the safe transport of a person to or from a health care facility is encompassed within the provision of healthcare. *See e.g.*, *Bain v. Capital Senior Living Corp.*, No. 05-14-00255-CV, 2015 WL 3958714, at *4 (Tex. App.—Dallas June 30, 2015, pet. denied) (mem. op.); *Sherman v. Healthsouth Specialty Hosp., Inc.*, 397 S.W.3d 869, 874 (Tex. App.—Dallas 2013, pet. denied); *City of Houston v. Houston*, 608 S.W.3d 519, 531 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Taton*, 2019 WL 2635568, at *5–6. As stated above, this is not a case where a patient simply tripped on a crack in the sidewalk. In this case, a health care provider chose to use Smith's walker as a wheelchair, and, while transporting Smith, the walker became lodged in a crack causing Smith to fall. Just as patient transport is a type of health care, a wheeled walker, which is used to transport residents at Collin Creek, is an instrumentality used in providing health care. Indeed, Smith's physician noted in his assessment of Smith's suitability for Collin Creek that she required a walker to "assist" with transfers. Accordingly, the third, fifth, and sixth factors all support the conclusion that Faber's claims are HCLCs.[6]

---

[6] The fourth factor is inapplicable in this case.

I agree with the majority that the final *Ross* factor does not support a conclusion that Faber has asserted HCLCs against Collin Creek. Although Collin Creek cites some general safety and training-related requirements imposed on assisted living facilities by statute,[7] these are akin to the regulations considered by the Texas Supreme Court in *Galvan v. Memorial Hermann Hospital System*, 476 S.W.3d 429, 432–33 (Tex. 2015) (per curiam), that were held to not have a substantive relationship to the safety standards underlying the plaintiff's claim.

On balance, however, a clear majority of the applicable *Ross* factors dictate that Faber's claims are HCLCs within the meaning of the TMLA, and the cases cited by the majority to reach the opposite conclusion do not change this fact. In support of its holding that Faber has not asserted HCLCs the majority relies primarily on *Galvan*, *Reddic v. East Texas Medical Center Regional Health Care System*, 474 S.W.3d 672 (Tex. 2015) (per curiam), and this Court's opinion in *Baylor University Medical Center v. Lawton*, 442 S.W.3d 483 (Tex. App.—Dallas 2013, pet. denied). *Galvan* and *Reddic* both concern slip and fall claims asserted by visitors to the hospital, not patients or residents as in this case. *See Galvan*, 476 S.W.3d at 429; *Reddic*, 474 S.W.3d at 672–73. More importantly, the claimants in *Galvan* and *Reddic* were not in the process of receiving health care when they fell. Rather, they were ordinary slip and fall cases, implicating the same duties that all premises

<hr>

[7] Collin Creek cited TEX. HEALTH & SAFETY CODE § 247.0011 (a)(7), (b)(4), (5) and 40 TEX. ADMIN. CODE § 92.41(a)(1) in support of this *Ross* factor.

owners owe to invitees. *See Ross*, 462 S.W.3d at 505 (fall that has no substantive relationship to provision of health care not an HCLC). In contrast, Collin Creek had a custodial relationship with Smith, in part, because she needed mobility assistance. Collin Creek was rendering mobility assistance to Smith when she was fatally injured. These circumstances are absent from both *Galvan* and *Reddic*.

In *Lawton*, a nurse employed by Baylor Hospital alleged that she became injured at work as a result of sewage fumes and chemicals used to treat clogged pipes. *Lawton*, 442 S.W.3d at 484. In concluding that Lawton had not asserted HCLCs against Baylor, this Court observed that Lawton's claims were completely untethered from health care and their only relation to health care was that they arose on hospital premises. *Id.* at 487. While *Lawton* was decided pre-*Ross,* the same result would obtain today. Although presumably Lawton was providing, or assisting in providing, health care at the time of her injury, there was no substantive nexus between the safety standards violated by Baylor and Lawton's provision of health care. *See Ross*, 462 S.W.3d at 504. In this case, Smith's injuries occurred as a result of Collin Creek's provision of healthcare, making the facts presented fundamentally different from those presented in *Lawton.*

Finally, Faber argues that Collin Creek's second motion was untimely because it was not filed within the statute's twenty-one-day deadline and the trial court erred in granting the motion for this independent reason as well. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). However, the twenty-one-day deadline applies only to

objections based on timely served expert reports, not to motions based on a plaintiff's complete failure to serve an expert report. *See Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex. App.—Dallas 2008, pet. denied).

Based on the forgoing, I would affirm the trial court's judgment of dismissal.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE


Joined by: Myers, Schenck, Pedersen, and Smith, JJ.

180827DF.P05